UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ETEAM, INC,

        Plaintiff,

v.

HILTON WORLDWIDE HOLDINGS, INC.,
and HILTON WORLDWIDE, INC.,

        Defendants.

OPINION

Civ. No. 15-5057 (WHW)(CLW)

**Walls, Senior District Judge**

Plaintiff eTeam, Inc. claims that Defendants Hilton Worldwide, Inc. and Hilton Worldwide Holdings, Inc. committed negligence, fraud, negligent misrepresentation, and unjust enrichment by allowing a former eTeam employee to charge an extended stay at a Hilton branded hotel to an eTeam corporate account. Defendants move for Summary Judgment on the basis that they are not liable for the acts of their franchisee. In the alternative, Defendants ask that the Court invoke Fed. R. Civ. P. 21 to remove them as a party. Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff eTeam, Inc. ("eTeam") is a New Jersey corporation specializing in staffing employees and independent contractors. Am. Compl., ECF No. 4, ¶ 1. Defendants Hilton Worldwide, Inc. and Hilton Worldwide Holdings, Inc. (collectively "Hilton"), are Delaware corporations providing hotel services. *Id.* ¶¶ 2-3.

In October of 2013, Plaintiff eTeam, authorized one of its employees, Jackline Ongwenyi, to stay at the Hilton Garden Inn, San Francisco Airport North in San Francisco, California (the "Hotel"). *Id.* ¶ 8. An employee of the Hotel communicated with an eTeam employee in New Jersey and obtained authorization to charge eTeam's corporate credit account for Ms. Ongwenyi's stay of five days. *Id.* ¶¶ 9, 10. After the authorized five days had passed, Ms. Ongwenyi continued to stay at the Hotel, using eTeam's credit account to pay for hotel services even after her employment with eTeam was terminated. *Id.* ¶ 12. Ms. Ongwenyi stayed at the Hotel from mid-October 2013 to mid-January 2015. San Francsico Police Report, ECF No. 36-9. During this period, eTeam incurred charges on its corporate credit account approximately every 7-10 days. *Id.* Ultimately, Ms. Ogwenyi's stay resulted in $82,883.68 in unauthorized charges. *Id.*

At all relevant time periods, the Hotel was a franchise property, operated by BRE Select Hotels Operating LLC ("BRE") pursuant to a May 14, 2013 franchise agreement (the "Franchise Agreement") between franchisee BRE and franchisor Hilton Garden Inn Franchise LLC ("HGI"), a wholly owned subsidiary of Hilton. Def.'s R. 56.1 Stmt, ECF No. 36-1 ¶ 8. The Franchise Agreement sets forth the relationship between BRE and the Hilton entities:

> **No Agency Relationship.** You are an independent contractor. Neither party is the legal representative or agent of the other Party nor has the power to obligate the other Party for any purpose. You acknowledge that we do not supervise or direct your daily affairs and that you have exclusive control over your daily affairs. You expressly acknowledge that the Parties have a business relationship based entirely on, and defined by, the express provisions of this Agreement and that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement.

Franchise Agreement, ECF No. 36-5 § 16.1 (emphasis in original).

The Franchise Agreement provides that "[Franchisee] acknowledge[s] that, although [Franchisor] provide[s] the Standards, [Franchisee has] exclusive day-to-day control of the business and operation of the Hotel and [Franchisor][does] not in any way possess or exercise such control." Franchise Agreement, ECF No. 36-5 § 5.1.2.

The Franchise Agreement incorporates by reference a manual titled "The Hilton Garden ('HGI') Standards Manual" (the "Manual"). Franchise Agreement, ECF No. 36-5 §§ 4.6, 14.1.4. Under the Franchise Agreement, Hilton had the authority to terminate BRE's franchise relationship if it failed to comply with any provision of the Manual. *Id.* §14.1.4. The Manual outlines the standards, procedures, rules, regulations, policies and techniques that HGI franchisees must adhere to. HGI Manual, ECF No.40-3 at 442. The Manual requires franchisees to maintain all aspect of the Hotel including "personnel, buildings, grounds, furnishings, fixtures, décor, equipment, signs, vehicles, linens, supplies, glass, printed matter and any other element thereof that affects the guest, directly or indirectly," in accordance with the Hilton standards described in the Manual. *Id.* §101.01.

eTeam brought this action against Hilton Holdings on July 1, 2015. On July 20, 2015, it amended its complaint, adding Hilton Worldwide as another defendant. ECF No. 4. Plaintiff's Amended Complaint claims violation of the New Jersey Consumer Fraud Act, negligence/gross negligence, equitable fraud, negligent misrepresentation, and unjust enrichment. *Id.* Defendants now move for Summary Judgment on the basis that as franchisors, they are the not the proper parties to this lawsuit. In the alternative, Defendants ask that the Court invoke Rule 21 of the Federal Rules of Civil Procedure to remove them as a party. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, the Court's "function is not . . . to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, and it is "inappropriate for a court to . . . make credibility determinations." *Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**DISCUSSION**

I.   **Vicarious Liability**

The Hilton entities argue that as a franchisor, they do not own or operate the Hotel, exercise no control over, and are not involved in the day-to-day operations of the Hotel. Accordingly, they argue that they cannot be held legally responsible for Plaintiff's damages.

To hold a franchisor liable for the acts of its franchisee, a court must find the existence of an agency relationship between the parties. *J.M.L. ex rel. T.G. v. A.M.P.*, 379 N.J. Super. 142 (App. Div. 2005). An agency relationship exists where one party (the principal) manifests assent to another party (the agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent. Restatement (Third) of Agency § 1.01 (2006). The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties *Drexel v. Union Prescription Venters, Inc.*, 582 F. 2d 781, 785 (3d Cir. 1978). In the franchise context, this means that the franchisor is able to exercise control over the day-to-day operations of the franchise. *See J.M.L. ex rel. T.G.*, 379 N.J. Super at 151 (finding no agency relationship where franchisor did not exercise control over day-to-day operations of the franchise).

The Third Circuit has noted the difficulties of applying traditional principles of agency to the relationship between a franchisor and franchisee. *See Drexel*, 582 F. 2d at 786. While some degree of control is inherent in the franchisor-franchisee relationship, "the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship." *Id.* The question of whether a franchisor has retained sufficient control to establish an agency relationship depends entirely on

the facts of each individual case, including the extent of the control as defined by the franchise agreement, and the actual practice of the parties.

### a. The language of the Franchise Agreement is not dispositive

As a preliminary matter, Defendants state that no agency relationship can be found to exist between the parties because the Franchise Agreement explicitly states that BRE is an independent contractor and that the parties have not contracted to form an agency relationship. Def.'s Br. at 13. This argument is not dispositive. The language used in a franchise agreement has no bearing on the actual nature of the relationship between parties. *Drexel v. Union Prescription Venters, Inc.*, 582 F. 2d 781, 786 (3d Cir. 1978) ("The fact that the franchise agreement expressly denies the existence of an agency relationship is not in itself determinative of the matter."). While the language of a franchise agreement may be considered as one element in determining the relationship between the parties, the "crucial" facts in this determination are the actual practices of the parties. *Levin v. Wear Ever Aluminum, Inc.*, 442 F.2d 1307, 1309 n.1 (3d Cir. 1971). The legal relationship between parties cannot depend on what the parties call it; it must be defined by what it actually is. That the Franchise Agreement states that there is no agency relationship between Hilton and BRE is not determinative to the question of whether Defendants can be held vicariously liable for BRE's actions. Relevant for this inquiry is the actual degree of control that Hilton exercised, or reserved the right to exercise, over BRE.

### b. Hilton's control over day-to-day operations

Defendants claim that the control they exercised over BRE was limited to that which was necessary to ensure conformity amongst their franchise locations and protect their brand and trademarks. *See* Def's Br. at 11-13. The right to ensure brand quality and consistency does not

6

usually give rise to a finding of vicarious liability. *Capriglione v. Radisson Hotels Int'l, Inc.*, 2011 WL 4736310 (D.N.J. Oct. 5, 2011). However, Plaintiff is able to point to a body of facts that support the assertion that the control exerted by Hilton over the Hotel's operations extended far beyond that which would ordinarily be necessary for a franchisor to protect their brand and trademarks.

The HGI Manual, which BRE was required to comply with or else risk termination of the Franchise Agreement, gave Hilton control over many aspects of the Hotel's operations including day-to-day operations. As example, under the terms of the Manual, BRE did not have the authority to make their own personnel decisions; they were required by Hilton to hire a pre-approved management company, all hotel managers had to be approved by Hilton, and all management employees were required to attend Hilton training programs. HGI Manual, ECF No.40-3 §§ 301-302.

Hilton exercised control over the basic day-to-day Hotel operations such as room cleaning and the serving of food. Maids employed by BRE were required to adhere to a specific cleaning and maintenance routine on a daily basis, in which Hilton went so far as to dictate the exact type and number of coffee packets to be left in each guestroom. HGI Manual, ECF No.40-3, §§ 900.6-900.16. Likewise, Hilton dictated the set up and operation of the Hotel's dining facilities, going so far as to specify the china, glassware and silver that BRE was required to use. *Id.* § 1101.07. All food handling employees were required by Hilton to shower or bathe daily, and were subject to a hand-washing routine so detailed that it specified the exact number of seconds employees had to run hot water for. *Id.* § 1101.03. Facts like these suggest that Hilton either was exercising, or reserved the right to exercise, a fairly extensive degree of control over day-to-day operations at the Hotel.

In further support of their argument that the Franchise Agreement did not give Hilton sufficient control over BRE to create an agency relationship, Defendants refer to cases from New Jersey and other states in which courts found that no agency relationship existed between a franchisor and franchisee. These cases are not persuasive. Because determination of agency relationship is a fact intensive inquiry, decisions in cases with differing factual circumstances have little bearing on our analysis. In particular, the cases cited by Defendants involve situations where the franchisor was unable to exercise control over personnel decisions, employee training, or policies and procedures that gave rise to the incident at issue. *See, e.g., J.M.L. ex rel. T.G. v. A.M.P.*, 379 N.J. Super. 142 (App. Div. 2005) (no agency relationship where franchisor had no role in hiring or terminating employees); *Simpkins v. 7-Eleven, Inc.*, 2008 WL 918482 (N.J. Super. Ct. App. Div. Apr. 7, 2008) (no agency relationship was franchisee was free to reject franchisor's employee training); *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83 (E.D.N.Y. 2000) (no agency relationship where franchisor did not exercise control over the instrumentality at issue; the restaurant's security policies and procedures). These are in plain contrast to the circumstances here, where Hilton retained a considerable level of control over BRE's personnel decisions and the training of Hotel employees, including a right of pre-approval for management hires, requiring employees to attend Hilton training programs, and specifying mandatory qualifications for potential hires. Manual §§ 301-302. Unlike the franchisors in many of these cases, Hilton retained direct control over the instrumentality at issue – the reservation processing and payment system at the Hotel – delineating highly specific rules and procedures for reservation processing and payment, which BRE was <u>required</u> to adhere to per the terms of the Franchise Agreement. Manual §§ 603.01-603.05.

The allegations of this case demonstrate that Hilton retained a great deal of control over the day-to-day operations of the Hotel, beyond that necessary to protect the integrity of its brand and trademarks. They give rise to a genuine question of material fact to the existence of an agency relationship between Hilton and BRE. Defendant's request for summary judgment must be denied.

## II. Apparent Authority

There is a genuine issue of material fact as to whether Hilton is vicariously liable, Defendants' motion for summary judgment has failed. We need not reach the additional question of whether Hilton might be liable under a theory of apparent authority.

## III. Defendants' Request to Invoke Fed. R. Civ. P. 21

As an alternative to their motion for summary judgment, Defendants ask the Court to dismiss the Hilton entities as improper parties under Fed. R. Civ. P. 21. Rule 21 allows the Court, on its own or on a motion by a party, to drop a party that has been misjoined. However, Rule 21 also provides that misjoinder of parties is not a ground for dismissal of an action. Because the Hilton entities are the only other parties to this action, dismissing them as parties would result in a total dismissal of Plaintiff's action without prejudice. This is impermissible. *See DirectTV, Inc., v. Leto*, 467 F. 3d 842, 845 (3d Cir. 2006) (a court cannot simply dismiss a suit altogether). Nor have Defendants alleged sufficient facts to suggest that the joinder of the Hilton entities in this action was in error. As discussed, Plaintiffs have alleged material facts that give rise to a genuine question as to whether Defendants can be held vicariously liable for the conduct upon which this action is based. Given that possibility, they have been properly joined as parties in this matter. Dismissal would not be appropriate.

## CONCLUSION

Plaintiff has demonstrated that there is a genuine issue of material fact as to Defendants' vicarious liability for the acts of BRE. Defendants' motion for summary judgment is denied. Defendants' request to be dismissed as misjoined parties under Fed. R. Civ. P. 21 is also denied. An appropriate order follows.

DATE: 12 June 2017

William H. Walls
Senior United States District Court Judge